## FIRST NAT. BANK IN STAMFORD v. JONES.

### No. 1113.

Court of Civil Appeals of Texas. Eastland.

May 5, 1933.

Thomas & Thomas, of Anson, and B. P. Davenport, of Stamford, for appellant.

E. V. Hardwick, of Stamford, and Tom Davis, of Haskell, for appellee.

HICKMAN, Chief Justice.

Appellant sued appellee on two promissory notes aggregating approximately $5,000, besides interest and attorneys' fees, and caused a writ of attachment to issue and be levied on a tract of 175½ acres of land in Jones county, which attachment lien was sought to be foreclosed. The defense was that the land upon which the attachment was levied was the homestead of the defendant and not therefore subject to attachment. No issue of fact was raised by the evidence as to appellee's liability on the notes. On the homestead question the court in his main charge, after instructing the jury that the word "farm" used in the special issue meant the 175½-acre tract in controversy, submitted the following issue: "Has the defendant Jack Jones at all times since the fall of 1919 in good faith intended to move his family back to the farm and make it a permanent home for him and his family?" To which the jury answered: "Yes."

The burden of proof was properly placed upon the appellee to establish the affirmative of the issue.

Upon request of appellee the court submitted this additional issue: "Do you find from a preponderance of the evidence that the defendant with his family occupied the farm in question as a home for several years prior to the fall of 1919?" To which the jury answered: "Yes."

In obedience to a peremptory instruction by the court the jury found in favor of appellant for the principal, interest, and attorneys' fees on the notes in suit, and on the verdict judgment was rendered in favor of appellant on the notes but denying it a foreclosure of the attachment lien.

The material facts are as follows: Appellee is a married man with five children, the youngest of whom was twelve years of age when this case was tried. He moved to Jones county in 1906 and lived on the particular tract in question with his family until the latter part of 1913. His father and mother were also living on this land during that period. During the year 1914 he did not live on this tract, but about January 1, 1915, his father came to him and told him to move back to the farm in question and take charge of it; that it was his. He was the only living child of his parents at that time, the others having died while single and without issue. Title to this property during all this time was in appellee's father, J. R. Jones. Following the invitation of his father he, with his family, moved back upon the premises in January, 1915, and his father and mother moved to the town of Stamford, where they continued to live during the remainder of their lives. During the period from January, 1915, until late in the fall of 1919, appellee and his family lived continuously upon the premises, cultivating and using same as their home. During the month of November, 1919, appellee purchased a house in the town of Stamford, into which he moved his family for the purpose of educating his children in the public schools. The family has continued to reside in this home in Stamford to this day, except for a few months in the summer of 1920, when they were on the farm with appellee. His youngest child is still attending the public schools. The evidence amply supports the conclusion that appellee's only purpose in moving his family to town was to educate his children, and that it was his intention at all times for the family to return to the farm as soon as the purpose of the move to town had been accomplished. Appellee did not establish any business in town, but continued year by year to cultivate the land just the same as when his family resided thereon with him. He retained a portion of the residence on the farm wherein he kept a cook stove, cooking utensils, bed, and other necessary articles of furniture for his use on occasions when he stayed there. He raised his meat on the farm and kept milch cows and other stock thereon. He raised chickens on the farm and would take them in to his family in town to supply their table. His mother died in 1924, and his father in 1929. We presumed they each died intestate, since both briefs so treat the facts. The attachment was levied subsequent to the death of the father. After the year 1915 appellee erected

valuable and permanent improvements upon the property, consisting of new barns, sheds, and windmills, all at his own expense. During the year 1928 appellee executed a deed of trust to secure a loan to the John Hancock Life Insurance Company, in which the town property owned by him was designated as his homestead. This deed of trust covered a tract of land owned by him in Jones county, but not the tract here claimed as his homestead. Both he and his wife testified that they did not know this homestead designation was in the instrument when they executed it. No question of estoppel on account of this designation is presented.

■ The principal contention of appellant is that, under the facts, a peremptory instruction in its favor should have been given. If we have correctly interpreted the record and the briefs, the parties have proceeded upon opposite theories of the applicable law. It seems to have been, and still to be, appellant's theory that appellee could have no homestead rights in the farm until after he became the owner thereof upon the death of his father; that prior to that time he had acquired a home in Stamford and never abandoned this urban homestead after he became the owner of the farm, and therefore acquired no homestead interest in the farm. On the other hand, appellee's theory seems to have been, and to be, that he acquired the homestead right in the farm prior to the time he acquired the town property in the fall of 1919 and has never abandoned that homestead right. The jury found upon sufficient, if not uncontradicted, evidence that appellee resided upon this property with his family as a home for several years prior to the fall of 1919. This covers the period from January, 1915, to November, 1919. He was not the owner of the property at that time, but he did have such a possessory right therein as would support his claim of homestead. American Nat. Bank v. Cruger, 31 Tex. Civ. App. 17, 71 S. W. 784; Birdwell v. Burleson, 31 Tex. Civ. App. 31, 72 S. W. 446; First Nat. Bank v. Dismukes (Tex. Civ. App.) 241 S. W. 199; Riggs v. First Nat. Bank (Tex. Civ. App.) 24 S.W.(2d) 454; Davis v. Lund (Tex. Com. App.) 41 S.W.(2d) 57; 22 Tex. Jur. p. 243, § 169; Nunn on Exemptions, pp. 114, 115.

■ It is contended that the possessory right under which appellee and his family occupied the farm during the lifetime of appellee's father, the owner, if regarded as sufficient to support the claim of homestead during that period, terminated upon the death of the father, and that, since that right ceased when the relationship was dissolved by the latter's death, in order to support his present claim of homestead it devolved upon him to show that he re-established his right thereto by possession and use after acquiring the fee title to the land. This contention is supported by the decision of the Court of Civil Appeals at Texarkana in the case of First National Bank v. Wallace, 13 S.W.(2d) 176, but the holding in this particular was overruled by the Supreme Court in Wallace v. First National Bank, 120 Tex. 92, 35 S.W.(2d) 1036. Upon the authority of this latter decision we hold that the homestead right acquired by appellee prior to the time when he became the fee owner was not destroyed when he became the fee owner, but, on the contrary, was enlarged by the acquisition of the greater estate. It follows that it was not necessary for appellee to cause his family to move back upon the farm after the death of J. R. Jones and again establish a home there in order to support his claim of homestead therein.

■ It is contended that the real issue to be determined by the jury was whether the land in question was the homestead of appellee on the date the attachment was levied, and that, since such issue was not submitted to the jury, there is no basis in the verdict for the judgment rendered. We cannot adopt this view. Of course, the determinative question was whether or not the land was appellee's homestead on the date of the levy; but, in determining that question, the only real fact issue was appellee's intention. The undisputed facts presented a situation where the question of whether appellee's homestead consisted of the farm in question or the residence in the town of Stamford was dependent upon his intentions. Had the jury believed that appellee left the farm with no intention to return, or that at any time before the trial, after acquiring the property in Stamford, he formed the intention not to return to the farm, then the urban property became his homestead. On the other hand, if appellee at all times after leaving the farm intended to return thereto and make it his permanent home, then he never abandoned the homestead right acquired there before the purchase of the urban residence. The court submitted the question of intention to the jury, and, it having been answered favorably to appellee's contention, the conclusion readily follows that the farm was appellee's homestead on the day of the levy of the writ of attachment. No jury finding of that conclusion was essential under the facts of this case.

■■ There is no merit to appellant's contention that the trial court erred in refusing to grant it a new trial on account of newly discovered evidence. We shall not lengthen the opinion by setting out even the substance of this evidence. It is sufficient to state that it was a matter addressed largely to the discretion of the trial court, and that it is not an abuse of that discretion to refuse a new trial where the evidence was forgotten rather than newly discovered, or where the parties failed to exercise due diligence to discover its existence before the trial. Gregg v. Bankhead, 22 Tex. 245; Hatchett v. Con-

ner, 30 Tex. 104; Griffith's Heirs v. Eliot, 60 Tex. 334; T. & N. O. Ry. Co. v. Scarborough, 101 Tex. 436, 108 S. W. 804; Kelsey v. Myers (Tex. Civ. App.) 29 S.W.(2d) 855.

There are many assignments in appellant's brief. We have not singled them out and discussed them separately, but what has been written disposes of every material contention urged. Not having sustained any of them, it follows that the judgment of the trial court should be affirmed, and it is accordingly so ordered.